**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **AMBULATORY CARE CENTER, PA**<br><br>       **Plaintiff,**<br><br>**vs.**<br><br>**SENTINEL INSURANCE COMPANY, LIMITED**<br><br>       **Defendant.** | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ambulatory Care Center, PA brings this Complaint, alleging against Defendant Sentinel Insurance Company, Limited**,** as follows:

### I.  NATURE OF THE CASE

1.  This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with the Defendant.

2.  In light of the Coronavirus global pandemic ("COVID-19") and state and local orders ("Civil Authority Orders"), Plaintiff has sustained significant business losses after all elective medical and surgical procedures were prohibited by civil order entered on March 23, 2020.

3.  Plaintiff's insurance policy provides coverage for all non-excluded business losses, and thus provides coverage here.

4.  As a result, Plaintiff is entitled to declaratory relief that it is covered for all business losses that have been incurred in an amount greater than $150,000.

### II.  JURISDICTION

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendant. Further, Plaintiff has suffered business losses in an amount greater than $150,000. The amount in

- 2 -

controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* at § 1332(a).

6. The Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activities in the State of New Jersey.  At all relevant times Defendant transacted, solicited, and conducted business in New Jersey through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New Jersey.  Defendant purposefully availed itself of personal jurisdiction in New Jersey because it contracted to provide insurance to Plaintiff in New Jersey which is the subject of this case.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Plaintiff is a New Jersey corporation and Defendant is a corporation that has substantial, systematic, and continuous contacts in the State of New Jersey, and the acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

### III.   **PARTIES**

8. At all relevant times, Plaintiff Ambulatory Care Center, PA ("Ambulatory Care"), is a Professional Association authorized to do business and doing business in the State of New Jersey, County of Cumberland.  Ambulatory Care owns, operates, manages, and/or controls a fully accredited ambulatory care center located at 1133 E Chestnut Avenue, Suite 902 in Vineland, New Jersey 08360-5001.

9. At all relevant times, Sentinel Insurance Company, Limited ("Sentinel") is a property and casualty insurance company.  Sentinel is a Connecticut company doing business in the State of New Jersey, subscribing to Policy Number 13 SBA TQ0842 issued to the Plaintiff for

the period of February 27, 2020 to February 27, 2021. *See* Policy Declaration page, attached hereto as Exhibit 1. Defendant is transacting the business of insurance in the State of New Jersey and within the County of Cumberland, provides business interruption coverage to its insureds, including Plaintiff, and the basis of this suit arises out of such conduct. On information and belief, Sentinel is a member of The Hartford Financial Services Group, Inc.

10. The policy, currently in full effect, includes business interruption coverage for, among other things, business personal property and income protection & extra expense.

11. Plaintiff submitted an insurance claim arising out of business losses sustained due to Plaintiff's slow-down as a result of COVID-19 and New Jersey civil orders.

### IV.    FACTUAL BACKGROUND

**A.    Insurance Coverage**

12. On or about February 27, 2020, Defendant entered into a contract of insurance with the Plaintiff specifically to provide commercial property insurance including, among other things, business income coverage in the event of business interruption or closures by order of Civil Authority, and for business losses as a result of property damage at its location in Cumberland County, New Jersey (the "Covered Property"[1]).

13. The Covered Property consists of Ambulatory Care, located at 1133 E Chestnut Avenue, Suite 902 in Vineland, New Jersey 08360-5001, which is owned, leased by, managed, and/or controlled by the Plaintiff. *See* http://surgerycenternj.com/ (last visited May 11, 2020). Prior to March 22, 2020, Ambulatory Care was open Monday through Friday with staff present in the facility from 6 a.m. through 6 p.m., performing approximately 75 surgeries per week.

---

[1] This address is listed as the Covered Property under the Policy.

14. The Covered Property is covered under Policy Number 13 SBA TQ0842 issued to the Plaintiff (hereinafter "Policy").

15. The Policy is currently in full effect, providing, among other things coverage for property, business personal property, income protection & extra expense, and additional coverages between the period of February 27, 2020 to February 27, 2021.

16. Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, coverage for the loss of business income and extra expense sustained in the event of business interruption or closures by order of Civil Authority.

17. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Covered Property is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Covered Property. This additional coverage is identified as coverage under "Civil Authority."

18. The "Civil Authority" provision in the Policy issued by Defendant provides coverage as follows:

> **q.    Civil Authority**
> This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".

19. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

20. Based on information and belief, the Defendant has accepted the policy premiums with no intention of providing coverage for business income losses resulting from orders of a Civil Authority that the Covered Property be shutdown, or any related losses and/or damages.

21. The Policy does not specifically exclude virus coverage, and in fact includes a specific endorsement for coverage in the event of a virus, which states "We will pay for loss or damage by "fungi", wet rot, dry rot, bacteria and virus."

**B.    The Coronavirus Pandemic**

22. The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage.  It is clear that contamination of the Covered Property would be a direct physical loss requiring remediation to clean the surfaces of the Covered Property.

23. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 29, 2020).

24. The CDC has issued a guidance that gatherings of more than 10 people must not occur.  People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

25. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

26. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**C.      Civil Authority**

27.     On March 9, 2020, New Jersey Governor Philip Murphy issued a Proclamation of Public Health Emergency and State of Emergency, the first formal recognition of an emergency situation in the State of New Jersey as a result of COVID-19. *See* Executive Order No.103, herein attached as Exhibit 2.

28.     On March 16, 2020, Governor Murphy issued an Order requiring all non-essential businesses in the State of New Jersey to cease operations and close all physical locations. Businesses that were permitted to remain open were "may remain open if they limit their occupancy to no more than 50 persons and adhere to social distancing guidelines." *See* Executive Order No.104, herein attached as Exhibit 3.

29.     On March 21, 2020, Governor Murphy issued a Stay-at-Home Order for residents of New Jersey. *See* Executive Order No.107, herein attached as Exhibit 4. The Order required that "brick-and-mortar premises of all non-essential retail businesses[2] must close to the public as long as this Order remains in effect."

30.     On March 23, 2020, Governor Murphy issued an Order Suspending All Elective Surgeries and Invasive Procedures, requiring that "all elective surgeries performed on adults, whether medical or dental, and all elective invasive procedures performed on adults, whether

---

[2] The Order enumerated essential businesses as follows: Grocery stores, farmer's markets and farms that sell directly to customers, and other food stores, including retailers that offer a varied assortment of foods comparable to what exists at a grocery store; Pharmacies and alternative treatment centers that dispense medicinal marijuana; Medical supply stores; Retail functions of gas stations; Convenience stores; Ancillary stores within healthcare facilities; Hardware and home improvement stores; Retail functions of banks and other financial institutions; Retail functions of laundromats and dry-cleaning services; Stores that principally sell supplies for children under five years old; Pet stores; Liquor stores; Car dealerships, but only to provide auto maintenance and repair services, and auto mechanics; Retail functions of printing and office supply shops; and Retail functions of mail and delivery stores. *See* Exhibit 4.

medical or dental, are suspended in the State." *See* Executive Order No.109, herein attached as Exhibit 5.

31.     The New Jersey Assembly passed a bill on March 16, 2020 that would provide "a mechanism by which certain businesses that suffer losses due to interruption as a result of the coronavirus disease 2019 pandemic may recover those losses from their insurer if they had a policy of business interruption insurance in force on March 9, 2020, the date on which the Governor declared a Public Health Emergency and State of Emergency in Executive Order 103."[3]

32.     Since that time, Plaintiff has seen a significant interruption in business operations and is unable to operate in the ordinary course of business.

33.     Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. I

---

[3] The bill was pulled from a March 23, 2020 New Jersey Senate vote. "The measure's sponsor, Assemblyman Roy Frieman, D-16th District, told NJBIZ that he wanted to give insurance companies more leeway with changing their policies to include pandemics." https://njbiz.com/murphy-expected-sign-host-bills-alleviate-covid-19s-economic-impacts/ (last visited May 9, 2020).

>speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/_cMeG5C9TjU (last visited on April 29, 2020) (emphasis added).

34. The President is articulating a few core points:

   a. Business interruption is a common type of insurance.

   b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

   c. This pandemic should be covered unless there is a specific exclusion for pandemics.

   d. If insurers deny coverage, they would be acting in bad faith.

35. On April 7, 2020, and then on May 6, 2020 Governor Murphy issued Executive Orders declaring that the Public Health Emergency declared in Executive Order No. 103 continues to exist and that all Executive Orders responding to the Public Health Emergency presented by the COVID-19 outbreak remain in full force and effect. *See* Executive Order No. 119 and 138, attached herein as Exhibits 6 and 7, respectively.

36. These Orders and proclamations, as they relate to the suspension of all elective medical procedures evidence an awareness on the part of both state and local governments that COVID-19 can and does cause damage to property. This is particularly true in places where

business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming unsuitable for business.

37. As a direct consequence of the Civil Authority stay-at-home orders for public safety issued by the Governor of New Jersey and the State of New Jersey generally, Plaintiff has suffered a significant slowdown in business.

38. **Impact on Ambulatory Care**

39. Plaintiff has sustained significant business losses after all elective medical and surgical procedures were prohibited by civil order on March 23, 2020.

40. As a further direct and proximate result of the Civil Authority Orders, Plaintiff has been forced to lay off 10 of its 18 employees, and the remining employees have seen a significant reduction in hours. Ambulatory Care used to average 80-100 procedures a week; now it is doing approximately 4 per week.

41. The significant majority of the operations of Ambulatory Care involves elective medical and surgical procedures to adults in New Jersey. As a result, the order entered by the New Jersey Governor on March 23, 2020 constitutes a prohibition of access to the Covered Property for individuals seeking the aforesaid elective procedures, creating a major slowdown and interruption in Plaintiff's business operations.

42. Plaintiff's business is not a closed environment and involves close personal contact between staff and customers, creating an ever-present risk that the Covered Property is contaminated and would continue to be contaminated.

43. Medical facilities contain inherently sick individuals and are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be

retained on the Covered Property and remain viable for far longer as compared to a facility with open-air ventilation.

44. The government-mandated slowdown is physically impacting Plaintiff. Any effort by the Defendant to deny the reality that the above-referenced Civil Authority Orders have caused physical loss and damage would constitute a false and potentially fraudulent misrepresentation.

45. A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the slowdown caused by the Civil Authority Orders is necessary. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## CAUSE OF ACTION
## DECLARATORY RELIEF

46. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

47. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also Valeant Pharm. Int'l, Inc. v. AIG Ins. Co. of Canada*, 2019 WL 1590896, at *6 (D.N.J. Apr. 12, 2019*); City of Asbury Park v. Star Ins. Co.*, 2018 WL 1469056, at *4 (D.N.J. Mar. 26, 2018).

48. An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

    a.    The Civil Authority Orders constitute a significant business interruption to the Plaintiff;

    b.  The Policy does not include an Exclusion of Loss Due to Virus here;

    c.  The Civil Authority Orders trigger coverage;

    d.  The Policy includes coverage for losses caused by the Civil Authority Orders;

    e.  The Policy includes coverage for losses caused by the Coronavirus;

    f.  The Policy provides coverage to Plaintiff for any current and future civil authority closures of businesses in Cumberland County and New Jersey State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

    g.  The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Covered Property; and

    h.  Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

49.  Plaintiff seeks a Declaratory Judgement to determine whether the Civil Authority Orders create a significant business interruption of Plaintiff's operations.

50.  Plaintiff further seeks a Declaratory Judgement to affirm that the Civil Authority Orders trigger coverage.

51.  Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in Cumberland County and New Jersey State due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Covered Property.

52.  Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Covered Property, amount of damages, or any other remedy other than declaratory relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

1) For a declaration that the Civil Authority Orders constitute an interruption of Plaintiff's operations.

2) For a declaration that the Civil Authority Orders trigger coverage under the Policy.

3) For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in Cumberland County and New Jersey State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

4) For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Covered Property or the immediate area of the Plaintiff's Covered Property.

5) For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: May 13, 2020                              Respectfully submitted,


*/s/ Richard M. Golomb*
Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Arnold Levin, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**

510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36103
Tel: (334) 269-2343
Fax: (334) 954-7555
Dee.Miles@BeasleyAllen.com
Rachel.Boyd@BeasleyAllen.com
Paul.Evans@BeasleyAllen.com

John E. Toczydlowski, Esquire
Trial Attorney
The Reiff Law Firm
1500 JFK Blvd., Suite 501
Philadelphia, PA 19102
215-740-3054 (cell)
215-246-9000 (office-main)
215-246-9012 (office-fax)
JToz@ReiffLawFirm.com

*Counsel for Plaintiff*